UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Janet M. B.,                                              Case No. 20-CV-2265 (JFD)

          Plaintiff,

v.                                                        **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

          Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Janet M. B. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Plaintiff contends she is disabled by, among other things, spinal disc degeneration, osteoarthritis, and poor vision. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 24) and Defendant's Motion for Summary Judgment (Dkt. No. 27).

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration on two grounds, including that the administrative law judge ("ALJ") erred in determining that: (1) Plaintiff's combination of impairments did not medically equal the criteria within Listing 1.04(A) in the Listing of Impairments,[1] and (2)

---

[1] The Social Security Administration's Listing of Impairments describes impairments to major body systems considered severe enough to prevent an individual from doing any gainful activity. Most impairments listed are permanent, but regardless, there is a durational requirement that the impairment must have lasted, or be expected to last, for at least a 12-month continuous period. Establishing that a claimant has a listed impairment is often a necessary but not sufficient step to establishing that a claimant is disabled.

Plaintiff's proper residual functional capacity ("RFC") need not include any vision-related limitation. As set forth below, the Court concludes that the ALJ did not err in either respect and therefore denies Plaintiff's Motion, grants the Commissioner's Motion, and affirms the Commissioner's final decision.

**I.     BACKGROUND**

Plaintiff applied for DIB benefits on August 24, 2017, alleging disability beginning on June 15, 2017. (Soc. Sec. Admin. R. (hereinafter "R.") 16, 161.)[2] Her alleged disabling impairments include a bulging disc in her neck; arthritis in her jaw, neck, shoulder, and hands; Achilles tendon difficulties; retinal detachment; a thinning left hip; and right arm mobility issues. (R. 278.)

**A.     Relevant Medical Evidence**

The most relevant medical evidence is from the period between the date of the alleged onset of disability (June 15, 2017) through the date of the final decision (November 26, 2019). The Court therefore focuses on evidence within that general timeframe in this Order. In addition, the Court does not summarize all of the medical evidence in the record, but only the evidence pertaining to the issues raised for judicial review.

On January 9, 2017, Plaintiff saw an optometrist for floating debris in her right eye. (R. 390.) The optometrist stated that Plaintiff's "ability to work in an environment where she is required to read, especially fine print, for extended periods of time is diminished due

---

[2] The Social Security administrative record is filed at Dkt. Nos. 21 through 21-8. The record is consecutively paginated, and the Court cites to that pagination rather than the docket number and page.

to the floater that is in her line of sight." (R. 391.) The optometrist also claimed that Plaintiff needs "frequent breaks" and "the ability to alter the contrast and size of print" that she is reading. (*Id.*) An examination on September 24, 2019, did not show substantial vision changes, and Plaintiff continued to require only prescription eyeglasses and annual check-ups. (R. 518.)

On January 25, 2017, Plaintiff saw Suzanne M. Pflaum, Certified Physician's Assistant (PA-C), for evaluation of tightness and pain in her upper back and neck. (R. 263.) Ms. Pflaum took magnetic resonance imaging (an "MRI") of Plaintiff's torso and did a clinical examination, finding Plaintiff suffered from mild degenerative changes in her cervical spine. (R. 264.) Ms. Pflaum recommended that Plaintiff continue her conservative course of treatment, including over-the-counter pain medications and ice, but that she also add physical therapy to her treatment. (*Id.*) Ms. Pflaum did not schedule Plaintiff for further evaluation. (*Id.*)

On September 14, 2017, Plaintiff saw Dr. Christopher J. Widstrom, M.D., for treatment of her right elbow pain, a wrist nodule, and painful locking in her small finger. (R. 358.) She reported that she had experienced her elbow pain for over 15 years, and that lifting and pushing seem to cause the pain. (*Id.*) She also described pain in her small finger triggered by a gripping motion. (*Id.*) According to Plaintiff, the wrist nodule did not cause her any pain. (*Id.*) Dr. Widstrom diagnosed Plaintiff with epicondylitis (tendon overload in the elbow from repeated use, sometimes referred to as "tennis elbow"), a trigger finger (when fingers become stuck in a position and bend or straighten with a snap), and an asymptomatic cyst. (R. 359–60.) Dr. Widstrom recommended cortisone injections,

3

physical therapy, and/or immobilization in a cast with autologous blood injections (injecting a patient's venous blood in and around the sore tendon to reduce intramuscular cysts and decrease new blood vessel formation), and that, if those treatments did not help, surgery was indicated. (R. 359–60.) Plaintiff consented to a cortisone injection and a physical therapy referral, which Dr. Widstrom provided, after which, Plaintiff was not scheduled for any further evaluation. (R. 360.) Plaintiff returned for a second cortisone injection later that same month (R. 354), and for slight recurrences of pain in her ring finger and thumb about five months later (R. 418). Dr. Widstrom took x-rays, found mild osteoarthritis, and offered Plaintiff another cortisone injection, but Plaintiff declined because she did not feel her symptoms warranted it. (*Id.*)

B.   **Administrative Proceedings**

Plaintiff's DIB application was denied on initial review and reconsideration. (R. 1–4.) At Plaintiff's request, an ALJ held a hearing on November 12, 2019. (R. 32.) At the hearing, Plaintiff testified that she had worked for 18 years as a secretary, which involved typing approximately 75% of the time, with some use of the telephone as well. (R. 39–40.) She also described that she had to actively retrieve physical files, and to twist in her chair to use her phone and her computer. (R. 46.) Plaintiff testified that, before that, she worked at two additional secretarial jobs in 2006, one of which she only worked at for three weeks because she found the computer knowledge demands too challenging, and another of which was a family-owned business for which she was on-call 40 hours each week, but typically worked only part-time hours primarily dedicated to speaking on the telephone. (R. 37–38.)

Plaintiff described her impairments as limiting her daily life, including her ability to shop outside the home or do chores inside the home or in her yard. (R. 40.) She expressed feeling depressed about the fact that she and her husband are both in poor health and that she cannot do all she would like to support them because of her impairments. (R. 41.)

Vocational expert Beverly Solyntjes testified at the hearing in response to two hypothetical questions posed by the ALJ. (R. 42–45.) The ALJ asked Ms. Solyntjes to consider a hypothetical person of Plaintiff's age, education, and work experience; who would be capable of performing sedentary work; who could never climb ropes, ladders, or scaffolds; could never stoop, kneel, crawl, or crouch; could occasionally climb ramps and stairs; and could never reach overhead. (R. 42.) Ms. Solyntjes testified that such an individual would be able to perform Plaintiff's past work as a secretary. (R. 43.) After asking whether Ms. Solyntjes believed that employers commonly permit employees to adjust their font size on their computers, which Ms. Solyntjes agreed employers typically permit, the ALJ asked Ms. Solyntjes whether her answer to the first hypothetical question would change if the person were also limited to only occasional use of near acuity and accommodation. (*Id.*) Ms. Solyntjes stated that such a person would not be able to perform Plaintiff's past jobs, nor could such a person's skills be transferred. (*Id.*)

The ALJ issued a written decision on December 2, 2019, determining that Plaintiff was not disabled. (R. 26.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of her disability. (R. 18.) At the second step, the ALJ found that Plaintiff had severe impairments of "degenerative disc disease of the spine,

5

status post surgery; right rotator cuff disease; right Achilles tendinitis; and degenerative joint disease of the feet and hip." (*Id.*)

At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.) In reaching this conclusion, the ALJ considered Plaintiff's past diagnoses or expressed health concerns, including esophagitis (inflammation of the esophagus), a visual floater in her right eye, fibromyalgia, elbow pain, a wrist nodule, finger pain, anxiety, and depression (R. 19–20.)

Of relevance to the issues raised on judicial review, the ALJ noted that Plaintiff had reported a floater in her right eye relating to retinal concerns, but found that the condition did not meet the required criteria for severity where it did not "result in more than minimal work-related restriction persisting over any 12-month period of time during the relevant time period." (R. 19.) Additionally, the record showed that, despite reporting a visual floater in her right eye, Plaintiff has not complained of visual limitations to treatment providers, and has claimed that the floater is not visible to her when using near vision. (*Id.*)

Also of relevance to this judicial review, the ALJ discussed Plaintiff's elbow, wrist, and finger concerns, noting that medical providers found that she could open and close her hand and fully extend it, flex and extend her thumb and fingers, use her elbow with a full range of motion, and tolerate a cortisone injection for her finger pain which relieved her symptoms for a period afterwards. (*Id.*) While the ALJ noted that the treating medical professional, Dr. Widstrom, found Plaintiff had mild osteoarthritis, the ALJ observed that

6

Plaintiff decided not to pursue more cortisone injections because her symptoms were mild, and that she did not pursue additional treatment for this issue after February 2018. (*Id.*)

Based on the ALJ's review of the record regarding these conditions, the ALJ considered Listing 1.04 (disorders of the spine) but found Plaintiff's conditions did not meet the following criteria: "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness . . . ) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); spinal arachnoiditis; or lumbar spinal stenosis with accompanying ineffective ambulation." (R. 20.) The ALJ found the record similarly did not support the criteria for Listing 1.02 (major dysfunction of a joint), requiring absent "gross anatomical deformity," "chronic joint pain and stiffness with signs of limitation of motion," "imaging of joint space narrowing, bone destruction or ankylosis," an "inability to perform fine and gross movements," and "difficulty in ambulating" captured by Listings 1.00B2b and c and 1.00J. (R. 20–21.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC.[3] Relevant to the issues raised on judicial review, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other relevant evidence in the record. (R. 22.) In particular, while Plaintiff has sought treatment for her complaints of pain, her treatment has been routine, conservative, and effective, requiring no ongoing care. (*Id.*) Thus, the ALJ found

---

[3] RFC, or residual functional capacity, "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

7

that the record lacked objective findings demonstrating that Plaintiff suffers the degree of physical restrictions she alleges. (*Id.*)

The ALJ also considered the persuasiveness of medical opinion evidence. (R. 24–25.) The ALJ found the state agency medical consultants' opinions partially persuasive, but went beyond their recommendations and limited Plaintiff "to sedentary work in terms of lifting and carrying" because the ALJ wanted to "giv[e] [Plaintiff] some measure of the benefit of the doubt" about her alleged symptoms. (R. 25.) As to Plaintiff's floater in her right eye, the ALJ found Plaintiff's optometrist's findings partially persuasive, agreeing that Plaintiff might need to adjust the size of print she reads, but was unpersuaded by the optometrist's claim that Plaintiff would need frequent breaks because the recommendation was neither associated with an impairment, nor substantiated with objective findings or explanations. (R. 25.)

Based on the record, the ALJ concluded that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except: the individual may never climb ropes, ladders, or scaffolds, crouch, kneel, or crawl; and may occasionally climb ramps and stairs, and stoop. The individual may not reach overhead.

(R. 21.)

The ALJ then proceeded to step four of the sequential evaluation and determined that Plaintiff could perform her past secretarial work because her RFC would allow it. (R. 25.) Consequently, at step five, the ALJ found that Plaintiff was not disabled. (R. 26.)

8

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

### C. Judicial Review

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. (Pl.'s Mem. Supp. at 13–14, Dkt. No. 25.) Plaintiff argues that the ALJ erred in determining that: (1) Plaintiff's combination of impairments did not medically equal the criteria within Listing 1.04(A), and (2) Plaintiff's proper RFC need not include any vision-related limitation. (*Id.* at 9–13). The Commissioner opposes Plaintiff's Motion and asks that the final decision be affirmed. (Def.'s Mem. Supp. at 1, Dkt. No. 28.)

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d

9

1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. DISCUSSION

#### A. The ALJ's Listing of Impairments Determination

Plaintiff argues the ALJ failed to "fully and fairly develop the record" in order "to determine if substantial evidence" shows that Plaintiff's "impairments do not equal the criteria contained in the Listings of Impairments." (Pl.'s Mem. Supp. at 13.) Plaintiff specifically argues that "it is unclear if [Plaintiff] met Listing 1.04(A) under the Listings of Impairments for Musculoskeletal Impairments" under 20 C.F.R. Part 404, Subpart P, Appendix 1, because the ALJ did not require a medical expert to testify at the hearing. (*Id.* at 9 (citing 20 C.F.R. § 404. 1520(d)).)

An ALJ is not required to have a medical expert testify at a hearing. *See* SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017) (stating that "adjudicators at the hearings

level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s)") (emphasis added). Plaintiff concedes this. (Pl.'s Mem. Supp. at 9.) Additionally, a plaintiff bears the burden of proving that their impairment met or equaled a listing's specific medical criteria. 20 C.F.R. § 404.1512(a); *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

There is substantial evidence in the record supporting the ALJ's conclusion regarding Plaintiff's spine-related conditions. The ALJ considered whether Plaintiff met the criteria of Listing 1.04 and found some criteria went unmet according to the record, including "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness . . . ) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); spinal arachnoiditis; or lumbar spinal stenosis with accompanying ineffective ambulation." (R. 20.)

Plaintiff has not presented evidence showing that, contrary to the ALJ's findings, the record supports that Plaintiff meets all of the criteria for Listing 1.04(A). Plaintiff argues that the record contains complex and severe impairments, including a neck surgery, nerve impingement, osteoarthritis and allied disorders, major joint dysfunction, and spinal disc disorders, and that given her age of over 60 years old and the fact that the state agency medical consultants found her various medical impairments to be severe, the ALJ should have consulted a medical expert about whether Plaintiff's conditions met the criteria of Listing 1.04. (Pl.'s Mem. Supp. at 11–12.) Plaintiff's arguments do not amount to what is required: pointing to evidence in the record showing that, contrary to the ALJ's decision,

11

the record shows that she did meet all of the criteria for Listing 1.04(A). While the ALJ considered the state agency medical consultants' opinions, the ALJ found them only partially persuasive because the state agency medical consultants determined that, contrary to Plaintiff's claims, she could be relatively active for long periods of the day, but the ALJ determined that to "giv[e] the claimant some measure of the benefit of the doubt," a more conservative approach to her physical limitations was warranted. (R. 24–25.) Additionally, while the consultants did find some of Plaintiff's conditions severe—as did the ALJ at step two—the severity of some criteria does not make up for the absence of other required criteria in a Listing of Impairments determination.

For example, Listing 1.04(A) requires demonstrated motor loss and ineffective ambulation, but the ALJ found that the record showed that during a February 20, 2017 examination with Ms. Pflaum, Plaintiff was "[a]ble to tandem walk without issue[,]"; that during an August 28, 2017 examination with Dr. Gerald A. Kiedrowski, M.D., Plaintiff had a "normal gait"; and that during a February 15, 2018 visit with Ms. Jacqueline J. Polipnick, PA-C, Plaintiff's "motor and sensory function" were "normal." (R. 21 (citing R. 263, 336, 404), 24.) Thus, the record supports the ALJ's finding that Plaintiff did not have motor loss and thus did not meet all of the criteria for Listing 1.04(A).

Next Plaintiff argues that the ALJ erred in not finding her vision impairments severe. (Pl.'s Mem. Supp. at 10–11.) Plaintiff claims that the record shows that her right eye floater creates a work limitation that causes her to need frequent reading breaks. (*Id.*) However, the ALJ found that, while Plaintiff complained of floaters in one eye, she did not report any visual impairment. (R. 19.) Moreover, her optometrist found Plaintiff's vision

to be 20/20 in January 2017 and 20/15 in September 2019, and recommended prescription eyeglasses and annual check-ups. (R. 390, 518.) These routine examinations and conservative courses of treatment further support the ALJ's findings. Additionally, the ALJ found Plaintiff's optometrist's recommendation that Plaintiff needed regular reading breaks unpersuasive because it was not tied to any findings or explanation, but agreed with her optometrist that Plaintiff's ability to adjust her computer text's size mitigated concerns that her vision might impede performance of her prior secretarial work. (R. 25.) Thus, the record supports that Plaintiff's vision is not severely impaired, and the ALJ relied on this substantial evidence in reaching a decision.

On this record, the Court cannot find that the Commissioner erred in determining that Plaintiff did not meet the criteria for Listing 1.04(A) or have severe vision impairment. Plaintiff may disagree with the Commissioner's conclusions, but where the Court finds substantial evidence supporting those conclusions, the Court may not. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154–56 (2019); *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings at step three of her evaluation process.

      **B.**    **The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Next, Plaintiff argues that the ALJ improperly determined her RFC because the ALJ disregarded the vocational expert's responses to a hypothetical question posed during the November 2019 hearing. (Pl.'s Mem. Supp. at 12.) During that hearing, the ALJ asked the vocational expert whether a person hypothetically limited "to only occasional use of near acuity and accommodation" would "be able to do any of the [Plaintiff's] past jobs?" (R.

43.) The vocational expert answered no. (*Id.*) Plaintiff argues that this shows that her RFC should have included vision-related limitations. (Pl.'s Mem. Supp. at 13.)

There is substantial evidence in the record supporting the ALJ's conclusion regarding Plaintiff's RFC. Adhering to the Court's analysis above in Section III.A, which the Court will not repeat in-full again here, the ALJ found that Plaintiff's unremarkable vision examinations and conservative course of treatment did not support a finding that her vision impairments were severe or that they would limit her ability to perform her past secretarial work. (R. 19, 25.) This is particularly true where the vocational expert testified that Plaintiff *could* perform her past work, and that her vision-related impairments could be easily accommodated by changing the font size on her workplace computer. (R. 42–43.)

Plaintiff asks this Court to find that the ALJ did not properly incorporate the vocational expert's answer to the ALJ's second hypothetical question into Plaintiff's RFC, but that is not the purpose of hypothetical questions posed during a hearing. Instead, an RFC is informed by whether the ALJ finds substantial evidence in the record to support it. Where the record does not support that particular limitations are present, hypothetical questions about those limitations asked during a hearing need not bear on an RFC's outcome. Here, the ALJ did not find adequate support in the record for an RFC that included limiting Plaintiff "to only occasional use of near acuity and accommodation" based on her impairments. (R. 19, 25, 43.) Therefore, the vocational expert's testimony did not dictate any other finding, and indeed, can be contradicted by an ALJ's ultimate RFC determination which reflects findings based on the record as a whole, not on one expert or professional's opinion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.2012). The ALJ's

14

RFC determination is supported by the record as a whole, and thus, the Court declines to disturb the ALJ's determination of Plaintiff's RFC.

On this record, the Court cannot find that the Commissioner erred when she determined that Plaintiff's RFC need not include limitations relating to impaired vision because, where the Court finds substantial evidence supporting those conclusions, the Court defers to the Commissioner's decision. *See Biestek*, 139 S. Ct. at 1154–56; *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings between steps three and four of her evaluation process, and that the ALJ did not commit a reversible error in determining Plaintiff's RFC.

In sum, because the Court finds that substantial evidence in the record supports the Commissioner's findings, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 24) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 27) is **GRANTED**; and

3. The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: July 5, 2022 　　　　　　　　　　　　　　*s/ John F. Docherty*
　　　　　　　　　　　　　　　　　　　　　　　JOHN F. DOCHERTY
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge